## MILLER v. AMORETTI.
### (No. 900; Decided June 3rd, 1919; 181 Pac. 420.)

BANKS AND BANKING—LIABILITY OF STOCKHOLDERS—STATUTORY CON-
STRUCTION—AUTHORITY OF RECEIVER TO ENFORCE STOCKHOLDERS'
LIABILITY IN A FOREIGN STATE—JUDGMENT OF FOREIGN STATE—
FULL FAITH AND CREDIT—CONSTITUTIONAL LAW.

1. Revised Codes of Montana, Section 4012, providing that the stockholders of every banking corporation formed under the Chapter of which said Section is a part shall be liable to the extent of the par value of stock owned by them for corporation debts, is not confined in its operation to banking corporations organized under the act in which said Section appears, but applies to banking corporations existing at the time the act was passed.

2. The liability of a stockholder in a banking corporation organized under the Act of which Revised Codes of Montana, Section 4012, is a part, for a debt of a corporation to the extent of the par value of his stock, is contractual and runs directly to the creditors of such corporation. Such liability is not an asset of the corporation, and cannot be enforced by a general receiver of an insolvent banking corporation by action in a foreign State, where the Statute authorizing his appointment does not empower him to bring such an action in Montana.

3. This court, in deciding whether a receiver appointed in Montana can maintain an action in Wyoming to enforce the liability of stockholders of a bank under the Montana Statute, will follow a decision of the Montana Supreme Court, holding that the Statute created a right of action in creditors alone, though the action in which the decision was rendered was brought by creditors and the question arose only incidentally on the issue of a right to set-off by defendant of a claim against the defendant.

4. Where a receiver of an insolvent bank, in pursuance of an order of the appointing court, brought an action in a court of another State, to enforce the statutory liability of a

stockholder, denial by such court of his right to recover does not violate Const. U. S., Art. IV, Section 1, requiring full faith and credit to be given in each State to the judicial proceedings of another State, since inqury into the foreign court's jurisdiction is not a denial of full faith and credit.

ERROR to District Court, Fremont County; HON. CHARLES E. WINTER, Judge.

Action by H. B. Miller as receiver of the Farmers State Bank of Bridger, Montana, a corporation, against Eugene Amoretti, Jr. Defendant demurred to the petition as amended, which was sustained, and thereupon the plaintiff excepted to the ruling and refusing to further plead, judgment was rendered and entered in favor of defendant. Plaintiff brings error.

*E. H. Fourt*, for plaintiff in error.

The Montana court adjudged insolvency and directed the receiver to proceed and collect from stockholders an amount equal to the par value of their stock; this is a final judgment of the Montana Court entitled to full faith and credit under the Federal Constitution; the liability of stockholders to creditors of the bank to the extent of the par value of their stock is fixed by the Montana Statute and is therefore a part of the contract under which the shares are taken. The Montana law also provides for the appointment of a receiver. This case is to be distinguished from McLaughlin v. O'Neil, 7 Wyo. 187, 51 Pac. 243, since in that case, the Utah court had not judicially found the amount of the deficiency. In the present case the Montana court has determined the liability. Nichols v. Board, 76 Pac. 681, sustains the point. There is no other proceeding provided by the laws of Montana, which could conflict or supersede the power and authority of the receiver in the present case. (See also Childs v. Blethen (Wash.), 82 Pac. 405; Finney v. Guy, 49 L. R. A. 486; State v. Union Stock Yards Bank, 70 N. W. 752.) The assessment of stockholders of an insolvent bank is a secondary remedy. A receiver takes possession of all property for the benefit of creditors and should

be impowered to enforce every liability necessary to protect the rights of creditors. (Wilson v. Book, 43 Pac. 939.) Creditors cannot be permitted to supersede receivers in the exercise of this right without first showing good cause and obtaining leave of court in which the insolvency proceedings are pending. (Anderson v. Seymour, 73 N. W. 171; Bank v. Anderson, 73 N. W. 174; Miller v. Lane, 116 Pac. 58.) The Montana statute provides that stockholders shall be liable for all of the contracts, debts and engagements of the corporation and differs somewhat from double liability statutes in other states. It should, therefore, be left to the State of Montana to provide for the necessary arrangements and conditions under which the creditors may obtain money due them. In the following cases involving similar statutes the right of receivers to maintain actions against stockholders in foreign states has been maintained: Howarth v. Elwanger, 86 Fed. 54; McTammany v. Day, 128 Pac. 563; Waterson v. Materson, 46 Pac. 1041. In Iowa the statute provides that the stockholders are liable to creditors and in a suit brought in the State of Washington on the Iowa statute, it was held that the receiver of the bank was not a proper party to bring the suit; the distinction in the language of the Montana statute would appear to sustain the authority of a receiver of insolvent bank to maintain an action against stockholders in foreign states.

*John Dillon* and *Ralph Kimball*, for defendant in error.

It is not alleged that the corporation was organized under the statute creating a double liability of stockholders; this is necessary. (1 Cook Corps., Secs. 212-214.) The double liability of stockholders is for the benefit of the creditors only. It is not an asset of the corporation and a general receiver of the corporation has no right to enforce its payment in the absence of a statute giving him such authority. (1 Cook Corps. 218; Morse on Banks, 696; Zang v. Wyant, 56 Pac. 565; Adams v. Clark, 85 Pac. 642; Walsh v. Shanklin, 102 S. W. 295, 31 L. R. A. N. S. 365, and note 3 R. C. L. 414.) Even a receiver appointed especially for

the creditors has been held to have no authority to enforce such liability. (McLaughlin v. Kimball, 58 Pac. 685.) A general receiver is without authority to enforce the liability. (McLaughlin v. O'Neil, 7 Wyo. 187.) There is but one case authorizing a receiver to maintain such an action. (Wilson v. Book (Wash.), 43 Pac. 939.) The Minnesota cases are based on a special statute authorizing a receiver to maintain actions of this character. Finney v. Guy and Stone v. Bank cited by plaintiff in error are not in point, nor is the Idaho case of McTammany v. Day. A recovery by the receiver will not discharge the liability existing in favor of creditors only.

POTTER, JUSTICE.

This is an action brought by the receiver of the Farmers State Bank of Bridger, Montana, to recover of the defendant as a stockholder of the bank an amount equal to the amount of his stock, alleged to be due under a statute imposing a liability to that extent, in addition to the amount invested in the stock, upon the stockholders of a banking corporation, severally and individually, for all contracts, debts and engagements of the corporation. Demurrers to the original and an amended petition having been sustained, a second amended petition was filed to which also a demurrer was filed and sustained, and thereupon, the plaintiff excepting to the ruling, and refusing to further plead, judgment was rendered and entered in favor of the defendant. The plaintiff brings the case here on error, assigning as error the order sustaining the demurrer to the second amended petition, and the rendering of judgment against the plaintiff.

The second amended petition alleges: That the Farmers State Bank of Bridger is, and at all the times mentioned in said petition was, a corporation duly organized under the laws of the State of Montana. That its principal place of business is at Bridger, in Carbon County, Montana. That on the 8th day of May, 1915, the said bank was insolvent and unable to pay its indebtedness, and its business had been suspended by order of the superintendent of banks of

said state. That by an order of that date of the district court of the thirteenth judicial district of said state, in and for the county of Carbon, the plaintiff was appointed receiver of said bank, "to take charge of its property and assets, collect all indebtedness due it, and generally to manage its business and affairs subject to the direction and approval of said court"; and that at all times since said date the said plaintiff has been, and is, the duly appointed, qualified and acting receiver of said bank. That it is necessary to collect from each stockholder of the bank to apply on its indebtedness the full amount of money for which he is liable as such stockholder, to-wit: A sum equal to the par value of the capital stock owned and held by him in addition to the purchase price thereof. That a sum equal to the total amount of the capital stock of the bank, to-wit: The sum of thirty thousand dollars, if paid in full by the stockholders, together with all the property and assets of the bank, will be wholly insufficient to pay its indebtedness. That on the 10th day of June, 1915, the said court, by an order duly made and entered, authorized and directed the plaintiff, for the purpose aforesaid, to assess each stockholder in an amount equal to the par value of his stock, to demand payment thereof, and to take any action necessary to enforce collection of the same, said order in that respect reading as follows:

"H. B. Miller, receiver of the above named Farmers State Bank of Bridger, is hereby expressly authorized and directed to forthwith assess and demand from each of the above named stockholders of said bank the payment of an amount equal to the par value of the capital stock owned and held by him, and to be applied upon the indebtedness of said bank, and said receiver is hereby further authorized and empowered to bring such actions or take such other steps as he may find necessary to enforce the collection and payment of such assessments."

That the defendant at all the times mentioned in the petition has been, and is, the owner of twenty-five shares of the capital stock of said bank of the par value of one hundred

dollars each, and is liable as such stockholder for the sum of twenty-five hundred dollars of the indebtedness of said bank; such liability arising under and by virtue of the provisions of section 4012 of the Revised Codes of the State of Montana, being a portion of the chapter of the Civil Code of that state entitled "Regulations of Banking Corporations", which said section reads as follows:

"The stockholders of every corporation formed under this chapter, or which may avail itself of its provisions, shall be severally and individually liable, equally and ratably, and not one for the other, for all contracts, debts and engagements of such corporation to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

That the district courts of the State of Montana are courts of original jurisdiction in all cases at law and in equity. That the statutes of Montana provide for the appointment of a receiver in cases where a bank fails or becomes insolvent. That it is provided by Section 50 of Chapter 9 of the laws of that state of 1889 as follows:

"Whenever the reserve of any bank shall fall below the amount required herein to be kept (fifteen per cent of deposit liabilities), such bank shall not increase its loans or discounts, otherwise than by discounting or purchasing bills of exchange payable at sight or on demand and the superintendent of banks shall notify any bank whose reserve may be below the amount herein required to make good such reserve, and in case the bank fails for thirty days thereafter to make good such reserve the superintendent of banks may notify the attorney general and he shall institute proceedings for the appointment of a receiver and to wind up the business of the bank."

That section 60 of the laws of 1889 provides:

"It appearing necessary to have a receiver appointed for any such bank or banks, the superintendent of banks shall make a full and complete statement of account and report to the governor with respect to the conditions of its business and affairs; and thereafter, should it appear to the gover-

nor that application should be made for the appointment of
a receiver, he shall thereupon direct the attorney general to
file a petition in the District Court of the county in which
the bank is situated asking for the appointment of a re-
ceiver, in the name of the State of Montana, and such a
petition shall be controlling and by the Court so considered
and acted upon, even though stockholders, creditors or others
may have theretofore filed application for the appointment
of a receiver."

That between the said 10th of June, 1915, and the com-
mencement of this action plaintiff demanded of defendant
the payment of an amount equal to the par value of his stock,
but that the latter has failed, neglected or refused to pay the
same or any part thereof, and that there is now justly due
and owing from the defendant to the plaintiff, by reason of
the facts aforesaid, the full sum of twenty-five hundred dol-
lars, no part of which has been paid. That on the 18th day
of November, 1916, in the said district court, in said state,
the said receivership being under consideration, and upon
proceedings duly had in said court, the said court found that
at the time of the appointment of said receiver, and that at
all times since said date, the assets of the said bank have
been and are of less amount than its liabilities. That said
bank was and is wholly insolvent and that its liabilities ex-
ceed the assets by more than fifty-four thousand dollars.
That the holders of said stock at the date of the appoint-
ment of the receiver are each liable, severally and individu-
ally, equally and ratably, for the debts of said bank, to the
extent and amount invested by them, and that it was ordered,
adjudged and decreed by said court, that said bank was
then wholly insolvent, that the proven liabilities exceed the
value of the assets by the sum of $54,000.00, that the re-
ceiver proceed by legal action to enforce the liability of the
holders of the capital stock,of said bank as provided by sec-
tion 4012 of the Civil Code of the State of Montana, and
that the said receiver is authorized to take whatever steps
are necessary to secure the payment of said liability.

The demurrer states three grounds: 1. That the court has no jurisdiction of the subject of the action. 2. That the plaintiff has no legal capacity to sue. 3. That the petition does not state facts sufficient to constitute a cause of action. Two points are urged in support of the order sustaining the demurrer and the judgment thereon. 1. That the petition fails to show a double liability on the part of stockholders under the statute pleaded declaring such a liability, for the reason that it does not allege that the bank was organized under the law containing the provision imposing the liability. 2. That the petition fails to show any authority in the receiver to sue for and recover from the stockholders the amount of such liability.

The first point is based upon the words of the section of the Montana statute (Sec. 4012, Rev. Codes) imposing the liability upon stockholders of every corporation "formed under this chapter, or which may avail itself of its provisions"; by reason of which it is contended for the defendant that no such liability is created except on the part of stockholders of a banking corporation organized under the law containing said provision subsequent to the enactment of the statute. If the statute had not been construed by the Supreme Court of Montana with reference to the words upon which said contention is made, we would not be inclined to consider this point, since we regard the question as to the right of the receiver to sue, suggested by the second point, as the principal and decisive question in the case. But that court has construed the section against the defendant's contention, holding that the words "formed under this chapter or which may avail itself of its provisions" have no place in the section and cannot be assigned any meaning, and that the provisions of the act applied to existing concerns, as well as those thereafter to be organized; and as so construed the section imposing the liability was held to be valid. (Barth v. Pock, 51 Mont. 418, 155 Pac. 282.)

The question suggested by the second point, whether, upon the facts alleged, the stockholders' liability under the

statute pleaded may be enforced in an action brought by the receiver to recover the amount, is broader than the jurisdiction of this court to decide, for it involves the right of the receiver to sue in the state in which he was appointed, and this court can only conclusively determine his right to sue in this state, and the question as presented by the facts is, of course, limited to the right to sue in this state. But for the purpose of deciding that question it is proper first to inquire as to the receiver's authority in the state of his appointment. If he is not authorized to maintain a suit of this character in that state, where the liability is imposed, he would certainly not be entitled to maintain such a suit in a foreign state, either as of right or by comity. (Evans v. Nellis, 187 U. S. 271, 23 Sup. Ct. 74, 47 L. Ed. 173; Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380.)

It is well settled that under a statute like that in Montana the liability of the stockholder is contractual, that it is not an asset of the corporation, nor enforceable by an assessment upon stockholders by or for the corporation, but that it is created exclusively for the benefit of, and runs directly to, the creditors. And the general and prevailing rule, sustained by the great weight of authority, is that the liability cannot be enforced by a general receiver of the insolvent corporatoin, unless authorized to do so by statute, either expressly or as judicially construed, or the liability is declared by statute to be an asset of the corporation. (1 Cook on Corp., 6th Ed., Sec. 218; 3 Clark & Marshall Priv. Corp., Secs. 820, 821; 3 R. C. L. 414; 23 R. C. L. 119; 7 C. J. 518; 2 Morse on Banks & Banking, 5th Ed., 696; Jones on Insolv. Corp., Sec. 543; Williams v. Carver, 171 Cal. 658, 154 Pac. 472; Zang v. Wyant, 25 Colo. 551, 56 Pac. 565, 71 Am. St. Rep. 145; Bank v. Scott, 144 Ky. 575, 139 S. W. 801; Runner v. Dwiggins, 147 Ind. 238, 46 N. E. 580, 36 L. R. A. 645; Golden v. Cervenka, 278 Ill. 409, 116 N. E. 273; Van Tuyl v. Carpenter, 135 Tenn. 629, 188 S. W. 234; McLaughlin v. Kimball, 20 Utah 254, 58 Pac. 685, 77 Am. St. Rep. 908; Steinke v. Loofbourow, 17 Utah 252, 54 Pac. 120; Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L.

Ed. 380; Finney v. Guy, 187 U. S. 335, 23 Sup. Ct. 558, 47 L. Ed. 839.)

In Morse on Banks and Banking, after stating who may sue for unpaid installments upon subscription for shares, it is said: "But if the demand is for further contribution beyond the amount of the par value of the shares already paid or due under the original subscriptions, then it would seem that, unless the statute expressly makes the sums thus contributed assets of the corporation, and directly gives the right of collection to the receiver or trustee, the suit should properly be brought by the creditors whose claims are to be paid out of the proceeds. It is their sole and peculiar right which they are at liberty to enforce when they please or altogether to forego. There seems to be no ground upon which any other person could sustain suits of this description, and hence it has been regarded as proper for the creditors themselves to bring them."

The principle is stated in Clark & Marshall on Private Corporations at the section cited as follows:

"In the absence of provision to the contrary, the individual liability for corporate debts imposed upon the stockholders of a corporation by a charter, statutory, or constitutional provision is solely for the benefit of, and directly to, creditors, and they only can enforce the same. The liability is not imposed for the benefit of the corporation, and is not in any sense a part of the assets, like unpaid subscriptions of stock, and, unless so provided by statute, it cannot be enforced by the corporation itself, by assessment or otherwise, even for the purpose of raising a fund for the payments of debts. It follows that the liability does not pass under an assignment by the corporation for the benefit of creditors, so as to entitle the assignee to enforce it; nor, in the absence of provision to such effect, can the liability be enforced by an assignee or receiver in bankruptcy or insolvency of the corporation, or by an agent appointed by the stockholders to wind up the affairs of the corporation, or by a receiver appointed by a court of equity, whether appointed at the suit of a stockholder or at the suit of a creditor, and whether he

is a general receiver invested with all the 'estate, property, and equitable interests of the corporation,' or a special receiver appointed for the purpose."

In 7 Corpus Juris 518, it is said on this subject: "Under some statutes the action to enforce the liability of stockholders is properly brought by the receiver of the bank, or it may be brought either by the receiver or by the creditors; but whether the statute does not designate by whom such an action shall be brought, the right of a receiver to sue depends on the view taken of the character of the stockholders' liability, so that, if it is regarded as a corporate asset, the receiver can sue therefor, while, if it is not so regarded, a suit cannot be brought by the receiver, but only by the creditors."

It seems clear that where, in addition to imposing the liability upon stockholders, the statute declares such liability an asset of the corporation, the receiver is vested with title thereto and the right to enforce it. Some statutes so providing go beyond that and also provide for the enforcement of the liability by the receiver, assignee, or other officer having the right to collect and distribute the corporate assets. Where, without declaring the liability to be an asset of the corporation, the receiver is required or authorized to enforce the liability, it is held that he is not then merely the ordinary chancery receiver, but that the legal effect of such provision is to make him a quasi assignee and representative of the creditors, vested as such with their rights of action against stockholders; and upon that ground his right to sue in a foreign jurisdiction is sustained. (Bernheimer v. Converse 206 U. S. 516; 27 Sup. Ct. 755, 51 L. Ed. 1163; Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913, p. 1292; 1 Cook on Corp., 6th Ed., 218.)

And the right of the receiver to maintain such an action in a foreign state is sustained also where the statute, though silent as to the procedure for enforcing the liability, has been construed by the highest court of the state in which it was enacted as requiring or authorizing the liability to be en-

forced by the receiver, and upon substantially the same ground as where the power is expressly conferred by the statute. (Howarth v. Lombard, 175 Mass. 570, 56 N. E. 888, 49 L. R. A. 301; Howarth v. Angle, 162 N. Y. 179, 56 N. E. 489, 47 L. R. A. 725; Howarth v. Ellwanger, 86 Fed. 54.) These cases were brought by a receiver appointed in the State of Washington, to recover upon the liability of stockholders imposed by the constitution and a statute of that state, under which, as construed by the Supreme Court of the state, in connection with other statutes, the liability becomes part of the corporate assets and is enforceable only by a receiver of the insolvent bank. (See Wilson v. Book, 13 Wash. 676, 43 Pac. 939.)

And in Howarth v. Lombard, *supra,* said construction was held to be binding upon the Massachusetts court. In Howarth v. Angle, the court said that the "implied promise" of the stockholder as to such statutory liability "runs to the creditors, and may, *according to the common law of the state where it was made,* be enforced for the benefit of creditors by a receiver of the corporation appointed to wind up its affairs"; and, further, referring to the decision of the Supreme Court of Washington respecting the nature of the liability: "The statutory liability of stockholders is an asset of the insolvent bank, 'the title to which was in said receiver, as a trust fund for the purpose of satisfying the claims of' creditors." In Howarth v. Ellwanger, the court said: "The courts of Washington have decided that this liability can only be enforced by a receiver under the direction of the court. (Citing cases.) The practical effect of a ruling that a receiver cannot maintain the suit would be to render the law nugatory as to all but resident creditors. The Washington courts having ruled that a receiver only can bring the suit, it is manifest, should the federal courts and other state courts hold that he cannot maintain the action, that the defendant not only but all stockholders beyond the jurisdiction of the Washington courts will escape a liability intended to be uniform and for the benefit of all creditors."

The distinction in this respect, under the decisions above referred to, between an ordinary chancery receiver and one who is authorized by statute to enforce the liability, when the action is brought in a foreign jurisdiction is well illustrated by two cases above cited decided by the Supreme Court of the United States: Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, and Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913, D. 1292. Each was an action brought by a receiver of an insolvent Minnesota corporation to enforce an alleged double liability under the constitution and statutes of that state In Hale v. Allinson it appeared that the statute provided a remedy for enforcing the liability, which did not include or authorize an action by the receiver. And the Supreme Court of Minnesota had decided that the statute provided the only remedy, a single action, in which all persons having or claiming an interest in the subject should be joined or particularly represented, and their respective rights, equities and liabilities finally settled and determined: that the receiver of an insolvent corporation was not a proper person to bring such action; and that a receiver could not maintain an action to enforce the superadded liability. The action was brought in a circuit court of the United States in Pennsylvania, where a demurrer to the bill was sustained; the demurrer stating, among others, two grounds, upon each of which it was held that the judgment sustaining the demurrer should be affirmed, viz: (1) That the receiver had no right to sue in the courts of a state foreign to that in which he was appointed. (2) That if he had a right to sue there, no ground of equitable jurisdiction was set forth in the bill, but the remedy, if any, was at law. We are concerned here principally with the discussion of the first ground.

Having referred to the decisions of the Minnesota Supreme Court denying the right of the receiver to maintain an action to enforce the liability, the court said:

"If a receiver cannot maintain this kind of an action in the courts of his own state, because its statute provides

another in the name of a creditor, or permits it only after the performance of conditions precedent which he has not performed, he cannot, although appointed in the State, maintain such action in a foreign jurisdiction. * * * This would seemingly be enough to compel the affirmance of the judgment herein, when we see that the Minnesota Supreme Court has held that a receiver cannot maintain such an action as this in the courts of that state. * * * We are of opinion, following the decisions of the highest court of Minnesota, that the statutes of that state do not provide for the appointment of a receiver to recover as such the amount of the added liability of the non-resident shareholders to creditors of an insolvent corporation. They do not provide that such liability shall be assets of the corporation, to be recovered by the receiver and payable to its creditors when such liability is enforced and the money recovered. There is no transfer of any right or title to a receiver to enforce the liability (certainly not as to non-resident stockholders), nor is it a case where any assignment of such right by the creditors has been made, so that the receiver is, in fact, an assignee of the persons interested in the recovery from the stockholders."

And the court said further that it was a simple case of the appointment, authorized by statute, of a receiver by a court of equity in the exercise of its general jurisdiction, with no title to the fund in him, "and where he acts merely as the arm of the court without any other right or title," and that "the question of comity cannot avail in a case where the courts of the state in which the receiver was appointed hold that an action similar to the one brought in the foreign jurisdiction cannot be maintained by him in the courts of the state of his appointment."

In that case it appeared also that the receiver, by order of the court appointing him, had been "authorized, empowered and directed to institute and prosecute all such actions or proceedings in foreign jurisdictions as may be necessary" for the purpose of enforcing the liability of non-resident stockholders. As to that matter, the court said

that the non-resident stockholders were only nominal parties in the Minnesota suit; that no service of process was made upon one of them; that no judgment was rendered against them; and that the action was not, therefore, ancillary or auxiliary to the Minnesota decree, and did not aid in the enforcement of that decree because there was no decree against such stockholders to be enforced.

It appeared in the case of Converse v. Hamilton, which had been brought in a state court in Wisconsin, that another statute had been enacted in Minnesota not involved in the case of Hale v. Allinson, which prescribed the mode of enforcing the liability pursued in the case then before the court, that by such later statute provision was made for bringing in all creditors into a sequestration suit, for the presentation and adjudication of their claims, ascertaining the relation of the corporate debts and expenses of receivership to the available assets, and whether and to what extent a resort to the double liability of stockholders was necessary, for levying assessments upon stockholders necessary to pay the debts, and for investing the receiver with authority to collect such assessments on behalf of the creditors, and to maintain actions therefor against each stockholder, severally, in Minnesota "or in any other state or country where such stockholder, or any property subject to attachment, garnishment or other process in an action against such stockholder may be found."

Referring to that statute, after stating that under the earlier statute, a receiver could not sue on behalf of the creditors in a home court or elsewhere, citing Hale v. Allinson, *supra,* and Finney v. Guy, 189 U. S. 335, 23 Sup. Ct. 558, 47 L. Ed. 839, the court said:

"Under this statute, as interpreted by the Supreme Court of the state, as also by this court, the receiver is not an ordinary chancery receiver or arm of the court appointing him, but a quasi-assignee and representative of the creditors, and when the order levying the assessment is made he becomes invested with the creditors' rights of action against the stockholders and with full authority to enforce the same in any

court of competent jurisdiction in the state or elsewhere.
(Straw & Ellsworth Co. v. Kilbourne Co., *supra;* Bern-
heimer v. Converse, *supra.*)   *   *   *   It is true that an
ordinary chancery receiver is a mere arm of the court ap-
pointing him, is invested with no estate in the property
committed to his charge, and is clothed with no power to
exercise his official duties in other jurisdictions.   (Booth
v. Clark, 17 How. 322, 15 L. Ed. 164; Hale v. Allinson,
188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380; Great Western
Mining and Mfg. Co. v. Harris, 198 U. S. 561, 25 Sup. Ct.
770, 49 L. Ed. 1163.)   But here the receiver was not merely
an ordinary chancery receiver, but much more.   By the pro-
ceedings in the sequestration suit, had conformably to the
laws of Minnesota, he became a quasi-assignee and repre-
sentative of the creditors, was invested with their rights of
action against the stockholders, and was charged with the
enforcement of those rights in the courts of that state and
elsewhere.   So, when he invoked the aid of the Wisconsin
court the case presented was, in substance, that of a trustee,
clothed with adequate title for the occasion, seeking to en-
force, for the benefit of his *cestuis que trustent,* a right of
action, transitory in character, against one who was liable
contractually and severally, if at all."

The court, in the same opinion, had said that "the liability
is not to the corporation but to the creditors collectively,
is not penal but contractual, is not joint but several, and the
mode and means of its enforcement are subject to legislative
regulation."

Now, in the case here, while the petition alleges that the
stockholder is liable to the extent of the par value of his
stock for the bank's indebtedness, and sets out the statute
declaring the liability, and also two sections providing for
the appointment of a receiver under stated conditions, the
matter of the recovery of the liability is not mentioned in
either of the sections pleaded, and it is not alleged or claimed
that there is any statute in Montana prescribing the pro-
cedure or method for enforcing such liability, or declaring
that the receiver shall have power or authority to enforce

or collect the same, or directing that he do so, or that the statutes set out in the petition have been construed by the Supreme Court of Montana as conferring such authority upon the receiver. Some contention is made upon the provision that the attorney general's petition for the appointment of a receiver "shall be controlling and by the court so considered and acted upon, even though stockholders, creditors or others may have filed application for the appointment of a receiver." But that provision does not seem to mean anything more than that the receiver shall be appointed in the proceeding instituted by the attorney general, by direction of the governor, rather than in another pending proceeding brought by stockholders or creditors, in case of conflict between any such proceedings.

Upon the allegations of the petition, therefore, the case seems to be controlled by the general rule that the liability is not an asset of the corporation, but runs directly to the creditors, and is not enforceable by a receiver having no greater rights than the ordinary chancery receiver. And there is nothing in the statutory provisions for the appointment of a receiver, set out in the petition, making him anything more than an officer or the arm of the court appointing him for the collection and distribution of the corporate assets, and to wind up the business of the bank. The conclusion would necessarily follow, in our opinion, that the receiver does not show a right to maintain this action.

But we are materially aided in thus interpreting the statutes by the officially published decisions of the highest court in Montana on the subject, for we find that the statutes have been considered and construed by the Supreme Court of that state. In a decision by that court in November, 1914, it was held that the receiver of an insolvent bank, like the receiver in charge of the estate of any other insolvent, is the arm of the court to accomplish the distribution of the assets of the insolvent, and occupies a position in no respect different from that of the insolvent prior to the appointment; and that he becomes merely the assignee of the insolvent, and has exactly the same rights. (Williams v.

Johnson, 50 Mont. 7, 144 Pac. 768, Ann. Cas. 1916D, 595.)
In a more recent case, in which the receiver in this case
appears to have been a party representing the same insolvent
bank, the same court again had occasion to consider the
character of such a receivership, and said: "A receivership
and an assignment for the benefit of creditors are two differ-
ent things. (Babcock v. Maxwell, 21 Mont. 507, 513, 54
Pac. 943.)    But this court has said that the position of a
receiver is no better and no higher than that of an assignee;
he occupies a situation not materially different from that of
the insolvent prior to the appointment; he is the arm of the
court to accomplish, when necessary, the distribution of the
assets of the insolvent according to the rights of those en-
titled thereto." (Citing Williams v. Johnson, *supra*.) (Aetna
Acc. & Liability Co. v. Miller, Receiver of Farmer's Bank
of Bridger, 54 Mont. 377, 170 Pac. 760, L. R. A. 1918C,
954.)    And in Barth v. Pock, 51 Mont. 418, 155 Pac. 282,
that court held that the receiver of an insolvent bank cannot
maintain an action to enforce the liability of its stock-
holders under the statute aforesaid, and that it can only be
enforced by creditors.

That case was decided in December, 1915, prior to the
filing of the first amended petition in this case, and nearly a
year before the second amended petition was filed.    In that
action, which was brought, apparently by creditors, against
certain stockholders of an insolvent bank, the State Savings
Bank of Butte, to enforce their liability under the Montana
statute, the court had before it two questions affecting that
liability:    First, the stockholder's right to set-off against his
liability the amount of the bank's indebtedness to him, and,
second, the liability of a stockholder upon stock which had
been donated by him to the bank some time prior to its
suspension for the purpose of increasing its surplus and
providing a fund to pay losses incurred by the bank, and
which remained unsold at the time of its failure.    Explain-
ing the reasons for denying the asserted right of set-off,
and holding the stockholder liable on the unsold donated
stock, the court defined the nature of the liability under the

statute, and declared that it could not be enforced by the bank or its receiver, but only in a suit by creditors. When discussing the alleged right of set-off, the court said:

"The double liability of a stockholder in a banking corporation is in its nature contractual and not penal.  *  *  * The liability is several and individual, created by statute in favor of all who are creditors at the date of the bank's failure. Under this statute, the fund collected from an assessment upon the stock is held in trust for a ratable distribution among all the creditors, and its character is such as to preclude the idea that a stockholder may have his creditor's claim set off against his stockholder's liability. The two claims do not arise in the same right. His claim is against the bank, while his liability is to the creditors—not to the bank." And, considering the question of the liability upon the donated stock, upon the contention that under the decisions of the court to the effect that a domestic corporation may purchase its own stock it must also have the right to accept a gift thereof, resulting in relieving the stockholder from liability upon the stock so donated, the court said, after stating that a distinction is clearly drawn in that state between a trading and a banking corporation:

"The statutory double liability of a stockholder is peculiar to the law governing banking corporations—including therein trust companies. The creditor of a trading corporation must look to the corporation's assets for the discharge of his claim, but, in a sense, the creditor of a banking corporation has double security. He may look to all the assets of the bank in the first instance, and, if they are not sufficient, he may then call upon the stockholders to contribute a fund which may equal the par value of the entire authorized capital. Over such fund the corporation has no control. It cannot release a stockholder from all or any portion of his liability, and neither it nor the receiver in charge of its affairs can even maintain an action for its enforcement for it is not a corporate asset. (Zang v. Wyant, 25 Colo. 551, 71 Am. St. Rep. 145, 55 Pac. 565; Farmers' Bank v. Scott, 144 Ky. 575, 139 S. W. 901.) It

is a reserve trust fund created for the benefit of creditors, and under our statute must be distributed ratably to all of them. Its character is so far distinct that collection can be enforced only at the suit of all the creditors or by one or more creditors for the use and benefit of all. (Bank v. Scott, above; 3 Clark & Marshall on Private Corporations, p. 2584; 3 R. C. L. 412.)"

That construction of the statute by the Montana Supreme Court is certainly persuasive as to its interpretation in this case, and should be followed by this court, even if we might be of the opinion that it should be construed otherwise, unless it was not necessary to a decision of any question then before the court. And we do not feel at liberty to regard it as mere dictum. The statement that an action to enforce the liability cannot be maintained by the receiver of the bank may not have been necessary, since it does not appear that the receiver was a party to the case. But creditors were parties, as we understand the case, seeking as plaintiffs to recover upon the liability, and the court's statement that collection can be enforced only by the creditors or by one or more creditors for the use and benefit of all seems to have been pertinent, though perhaps outside the issues presented by the defenses considered in the opinion; and the result was an affirmance of a judgment in favor of the creditors.

If the statement as to the right of a receiver to enforce the liability might be held so far from necessary to a decision of the case as to amount to mere dictum, what was said as to the nature of the liability—that it is not a corporate asset, that the corporation has no control over it, that neither it nor its receiver can release a stockholder from his liability, and that the liability is to creditors and not to the bank, cannot, we think, be considered as unnecessary to a decision in the case upon the questions presented. That the liability is to the creditors and not to the bank was stated as a reason precluding the idea that a stockholder might have his claim as a creditor set off against his liability. That it

is not a corporate asset, or, when collected, a fund over which the corporation has any control, and that the bank cannot release the liability, were stated as grounds for the conclusion that a donation by a stockholder of part of his stock to the bank did not relieve him from liability thereon, where it remained unsold at the time of the bank's failure. And upon these several points so decided, and the other decisions of the Montana court above cited holding that the receiver of an insolvent bank is the arm of the court for distributing the corporate assets, that he is merely the assignee of the insolvent, that he occupies a position in no respect different from that of the insolvent prior to his appointment, and has exactly the same rights, it would follow, and we might reasonably expect said court to hold, that an action could not be maintained by the receiver to enforce the statutory liability of stockholders. What was said as to that matter does not appear to have been questioned in any subsequent case, and we think it may be accepted as controlling the procedure in Montana respecting the authority of the receiver to enforce such liability. It is in harmony with the prevailing rule which, in the absence of a ruling in Montana to the contrary, we would feel compelled to hold applicable upon the facts in the case.

It is chiefly argued by counsel for the receiver that a decision denying his right to recover upon the liability will violate section 1 of article IV of the Federal Constitution requiring that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. But it is well settled that said provision does not prevent an inquiry into the jurisdiction of the court which rendered the judgment over the subject matter, or the parties affected by it, or into the facts necessary to give the original court jurisdiction. (2 Watson on the Const. 1196; Tucker on the Const., sec. 306; Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054; Thompson v. Whitman, 18 Wall. 457, 21 L. Ed. 897; Reynolds v. Stockton, 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464.) And the

contention here is completely answered in Hale v. Allinson, *supra,* where a similar, but much clearer and more comprehensive, order had been made by the court appointing the receiver; and, also, under like conditions, in Finney v. Guy, *supra.*

The contention was directly made in Finney v. Guy, that the Wisconsin court had failed to give full faith and credit to the laws and judgments of the state of Minnesota, but it was held by the Supreme Court of the United States that in refusing to allow the receiver appointed in Minnesota to maintain the action, although he had been expressly authorized to proceed against stockholders in other jurisdictions by an order of the court appointing him, the courts of Wisconsin did not fail to give full faith and credit to the laws and judgments of Minnesota, since the Supreme Court of Minnesota had decided that the liability was not enforceable by the receiver.

We conclude that it was not error to sustain the demurrer, and the judgment will be affirmed.          *Affirmed.*

BEARD, C. J. concurs.

BLYDENBURGH, J., being ill, did not participate in the decision.