## Walton Equitable Bank v. Cleek.

Jan. 9, 1940.

Vest & Vest for appellant.

Sidney Gaines for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—
Reversing.

The appellant, Walton Equitable Bank, a state banking institution, under the laws of the state of Kentucky, had a common capital stock of $50,000 divided into one thousand shares of the par value of $50 per share. The appellee, Laura R. Cleek, was the owner of ten shares of the capital stock, of the total par value of $500. In March, 1933, the stockholders of the bank, including appellee, were assessed one hundred per cent. of the par value of their respective shares of stock for the purpose of taking care of an impairment of the capital of the bank; appellee's share of the assessment being the sum of $500. She refused to pay the assessment and appellant brought this action in the Boone circuit court seeking judgment against her for said amount with interest thereon from March 24, 1933.

The substance or effect of the petition is that appellee was the owner of the ten shares of stock, as we have indicated above, and that during the numerous bank failures in March, 1933, and the temporary closing of numerous banks of the country, appellant bank was closed or temporarily ceased to operate, and that by an examination into the affairs of the bank by the State Banking and Securities Commissioner of Kentucky it appeared that the bank had an impairment and that J. R. Dorman, then the State Banking Commissioner of

Kentucky, addressed a letter or communication to the bank and its directors as follows:

"Gentlemen:

"This is to advise that this department has determined that you have an impairment, and, in accordance with the provisions of Section 165a, subsection 16, Kentucky Statutes, you are hereby notified to make an assessment to take care of the impairment. This assessment, in our opinion, should be a one hundred per cent assessment.

"In addition to notifying you as set out by Section 165a, subsection 16, Kentucky Statutes, we are also notifying you by reason of the authority conferred on me as Banking and Securities Commissioner by Presidential Decree, dated March 10, that this assessment should be made before a permit can be issued your bank to resume business.

"Because of the authority conferred by the Presidential Decree, we urge you not to take the thirty-day limit to make the assessment, but to do so immediately.

"We would also remind you that we do not think it wise to endeavor to reduce the impairment to the point that by reducing your capital you could operate.

"Yours truly,

"(Signed) J. R. Dorman, Commissioner."

That pursuant to the above communication or notification, R. B. Brown, the then duly elected, qualified and acting vice president of the bank (there being at that time no president), issued a call for a stockholders' special meeting to be held on Friday, March 24, 1933, at 2 o'clock P. M. for the purpose of considering the notice above set out and the levying of a one hundred per cent. assessment on the stock of the bank; that said notices were placed in the U. S. mail, postage prepaid, addressed to all stockholders of record of the said bank, including the defendant, which notices read as follows:

"Stockholders Meeting

"To the Stockholders of the Walton Equitable Bank:

"A special meeting of the stockholders of the Walton Equitable Bank has been called for Friday,

March 24, 1933, at 2 P. M. for the purpose of considering a one hundred per cent assessment on the stock of said bank.

"Please be present in person or fill out and return the enclosed proxy.

"Very truly yours,

"Walton Equitable Bank

"By E. S. West, Cashier."

It alleged that pursuant to the above notices a meeting of the stockholders of the bank was called to order in the office of the bank building at 2 o'clock P. M. the 24th day of March, 1933, with 703 shares of the common capital stock of said bank then and there represented in person and by proxy, and at said meeting a motion was duly and regularly made and seconded and unanimously passed, that the following resolution be adopted: (Then follows the resolution in usual form assessing the stockholders of the bank one hundred per cent. for the purpose of taking care of the impairment of the capital of the bank).

It alleged that the resolution was voted upon by the stockholders and was unanimously carried by 703 votes to nothing, and that said resolution was properly recorded in the minute book of the bank, and by reason of the passage of the resolution a levy of one hundred per cent. was assessed against each stockholder payable in cash, and that there was levied against the stock of appellee the sum of $500, which sum or any part thereof has never been paid, although request and demand and notice therefor have been made through the authorized and acting officers of the bank.

The court sustained a demurrer to the petition, and appellant, plaintiff below, refusing to plead further, the petition was dismissed. Hence this appeal.

The order sustaining the demurrer to the petition assigns no reason therefor but we infer from the trend of argument in brief of counsel that the court sustained the demurrer because of alleged improper notice and the procedure taken preliminary to or leading up to the making of the assessment against the stockholders.

In brief of appellee it is argued that the court properly sustained the demurrer for various reasons. It is insisted that the letter or communication from the bank-

ing commissioner to the bank and its directors stated no facts showing the amount, or approximate amount, of the impairment. We do not think it was necessary for the notice to state detailed facts such as amount of impairment, etc. Such matters were more properly to be determined by the bank directors when they convened in meeting for the purpose of making the assessment. The notice stated that the bank had an impairment and it was necessary to assess the stockholders one hundred per cent. for the purpose of taking care of such impairment. We think this was all that was necessary.

It is also insisted that the notice from the banking commissioner to the bank and its directors referred to Section 165a-16 of the Kentucky Statutes, which, it is claimed, provides no authority for assessing the capital stock of a bank for any purpose, but only provides that the Banking and Securities Commissioner shall take charge of the bank.

While the notice mentioned subsection 16 of the statute, supra, yet it is obvious from the face of the notice that it was issued under the authority of subsection 15 of 165a which reads as follows:

"Whenever it shall appear that the capital stock of any bank has been impaired, the banking and securities commissioner shall notify such bank and each director thereof, to make such impairment good within thirty days, and it shall be the duty of the officers and directors of any bank receiving such notice from the banking and securities commissioner immediately to call a special meeting of its stockholders for the purpose of making assessments on its stock sufficient to cover the impairment of its capital, payable in cash: Provided, That such bank may with the consent of the commissioner reduce its capital to the extent of the impairment, if such reduction will not place its capital below the amount required by law."

A meeting of the board of directors was held at the time stated in the notice for the purpose of transacting the business specified in the notice and, since this was done, it cannot be said by any stretch of imagination that the rights of anyone were prejudiced because the notice inadvertently or otherwise mentioned an inapplicable section of the statute, conceding arguendo, that it was inapplicable. Since the Banking and Securities

Commissioner was authorized by the statute to call the meeting it was not necessary that the notice contain or set out specifically the applicable section of the statute or any section whatever. It follows therefore that there is no merit in the contention that the notice was invalid or the action of the board of directors rendered void because the notice did not specifically set out the precise section of the statute authorizing the Banking and Securities Commissioner to issue such notice, or to take the action authorized by the statute.

It is next insisted that the notice to the stockholders of the meeting of the bank directors did not designate the *place* where the meeting was to be held but merely designated the time and purpose of the meeting. Technically, perhaps, the notice should have stated the place of the meeting, but in the circumstances of this case we do not think its failure to do so rendered the meeting of the board of directors void. The notice specified the time and purpose of the meeting "of the stockholders of the Walton Equitable Bank," and concludes with this language: "Please be present in person or fill out and return the enclosed proxy." Appellee being a stockholder of the bank, no doubt she understood that the meeting would be held at the bank, since the notice mentioned the bank and requested her to be present. Evidently, if the meeting was intended to be held at a place other than the bank, the notice would have so specified, and since no other place was specified it would be most unreasonable to presume that appellee was prevented from attending the meeting, had she desired to do so, because the notice did not specifically state the place of the meeting.

We think the steps taken preliminary to the assessment of the stockholders were substantially correct. If appellee thought her right had been prejudiced by any technical error, such matters should have been pleaded as a defense to the action. And, further, it is disclosed in the record, that the assessment in question against appellee was made March 24, 1933, and this action was not filed until July 31, 1934, a period of 16 months later, and during that time appellee took no action in regard to the meeting or otherwise sought relief from the assessment against her.

In American Jurisprudence, **Vol. 13, p. 524, Section 484,** it is said:

"However, stockholders who were not present will be deemed to have ratified the action taken at an informal meeting or to have waived the objection of informality by failing to take active steps to set aside the action taken within a reasonable time."

Also, in Hill v. Atlantic & North Carolina Railroad Company, 143 N. C. 539, 55 S. E. 854, 860, 9 L. R. A., N. S., 606, speaking of irregularities of such or similar meetings, the court said:

"But we also think that the silence and inaction of the plaintiff Hill from September 1, 1904, to September 28, 1905, was a waiver of any right he originally had to object to irregularities of which he now complains. He has forfeited by his conduct any right he had in the beginning. It is a general rule of law, as well as of good morals and fair dealing, that if a party is silent when he should speak, or supine when he should act, he will not afterwards be permitted to either speak when he should be silent, or act when he has failed to do so at the first proper and opportune moment."

Appellee being a stockholder of the bank, evidently she knew of its financial troubles and knew that the stockholders, including herself, had been assessed, since it is alleged in the petition that notices and demand of payment of her assessment had been made and she had refused to pay same. She took no action to obtain any relief from the assessment and apparently ignored the whole transaction during the long interval of time between the assessment and the filing of this suit. Under the authorities last cited above, even though it be conceded that the notice of meeting was technically defective or irregular, appellee's objections thereto now come too late.

Lastly, it is insisted that the bank has no right to maintain this action and in support of this contention appellee cites Farmers' Bank of Wickliffe's Assignee v. Scott, 144 Ky. 575, 139 S. W. 801, and perhaps other like and similar authorities. In the case, supra, it is held that the assignee of an insolvent bank, to whom its property has been assigned for the benefit of its creditors, cannot maintain an action against its stockholders to enforce their double liability under the statute, there being no statutory authority authorizing him to do so. It is to be observed that that case deals with insolvent

banks. In the case at bar appellant bank is not insolvent but is a going concern and no question of insolvency or enforcement of stockholders' liability for the benefit of creditors are involved. Hence that case is not applicable to the present case.

The statute, Section 165a-15 authorizes the Banking and Securities Commissioner and the directors of the bank to assess the stockholders of the bank for the purposes therein set out and does not place the authority for enforcing collection of such assessment in any particular person or body, and since no creditors or any other interested persons are involved except the bank and the stockholders, no doubt the bank has the right to enforce the collection of its assessment.

For reasons stated, the judgment is reversed and remanded, with directions to set it aside and to overrule the demurrer to the petition, and for proceedings consistent with this opinion.